**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE CONLON GROUP ARIZONA, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CNL RESORT BILTMORE REAL ESTATE, Inc., et al.,<br><br>　　　　Defendants. | No. CV-08-965-PHX-FJM<br><br>**ORDER** |

This is a trial to the court without a jury. We took the matter under advisement at the close of all of the evidence. These are our Findings and Conclusions under Rule 52(a), Fed. R. Civ. P.

This is the third time this court has been required to act in the continuing saga between the Arizona Biltmore Hotel (Hotel) and some of the owners of villa units adjacent to the Hotel. In *The Conlon Group Arizona, LLC v. CNL Resort Biltmore Real Estate*, CV-06-2065-PHX-FJM, final judgment entered in favor of the Conlon Group and against the Hotel on the Conlon Group's right of access to the Hotel's books, damages for credit card fee overcharges, damages for travel agent commission overcharges, damages for overuse of complimentary villa rooms by employees, and in favor of the Hotel and against the Conlon

Group on Conlon's claims arising out of the Hotel's use of villa rooms on a complimentary basis generally.

Then, in *The Conlon Group Arizona, LLC v. CNL Biltmore Real Estate*, CV-09-1163-PHX-FJM, the court granted plaintiff's motion for summary judgment and declared that the Hotel does not have the right to unilaterally terminate the Rental Pool Agreement.

In the instant action, CV-08-965-PHX-FJM, we have a redo of *Conlon I*. Conlon is the assignee of the rights of various other owners of villa units and once again alleges breach of contract and breach of the covenant of good faith and fair dealing against the Hotel for (1) credit card and travel agent fee overcharges, (2) overuse of villas as complimentary rooms, (3) undercharging for villa units, and (4) limiting the use of the villa rooms to 17% of the Hotel's total room revenue.

Once again, the Hotel concedes overcharges for credit card expenses, travel agent expenses, and the effect of employee use of complimentary villa units. It suggests entry of judgment on these claims in the amount of $388,000.00.

As noted in *Conlon I*, paragraph 4(b) of the Rental Pool Agreement (Exhibit 26), vests the terms, conditions, rates and occupancy of the rental pool units to the "sole discretion" of the Hotel. Moreover, paragraph 4(b) provides that rates and occupancy would vary as a function of a variety of factors, including the use of the rentals on a complimentary basis, as expressly allowed by the Confidential Offering Memorandum (Exhibit 27), which is part of the Rental Pool Agreement (Exhibit 26). Exhibit 27 at 10 and 18. Finally, the owners' responsibility for travel agent and credit card charges is limited to "revenues received on rental pool units." Exhibit 26 at ¶ 7.

## I. Travel Agent Fees, Credit Card Charges and Complimentary Rooms (Employees)

The Hotel admits that it failed to keep specific records on travel and credit card charges applicable to specific rental units and thus it did not administer those charges pursuant to paragraph 7 of the Rental Pool Agreement. Instead, it greatly overcharged the villa unit owners based upon credit card charges and travel agent fees applicable to the whole Hotel.

1  Plaintiff seeks approximately $250,000.00 more than that conceded by the Hotel, but without
2  the records, based upon the evidence before me, it is impossible to properly compute these
3  admitted overcharges. Neither plaintiff's nor defendants' methodology was sufficiently
4  reliable or clear to choose between them and therefore, absent any other rational basis, we
5  find it more probable than not the amount due and owing for the credit card and travel agency
6  overcharges and overuse by employees of comped rooms is $525,000.00.

## II. Complimentary Rooms (Guests)

The Rental Pool Agreement and the Confidential Offering Memorandum together suggest that the Hotel would manage the villa rooms as an integral part of the Hotel. The documents thus vest in the Hotel maximum discretion on how to rent the villa rooms. The Confidential Offering Memorandum reveals to the villa unit owners that the Hotel would provide the rental pool units "on a complimentary basis from time to time to guests of the Hotel. The developer has complete discretion as to all such decisions." Confidential Offering Memorandum at 18. (Exhibit 27). The evidence showed that the villa rooms were comped more frequently than the Hotel rooms. However, the evidence also showed that the villa rooms were the kind of rooms that would most likely be comped because of their size, and because the demand for them was less. Moreover, there was no evidence that any villa room was comped when it could otherwise have generated revenue.

To be sure, the Hotel's discretion under the Rental Pool Agreement and Confidential Offering Memorandum, although "complete," is not unlimited. The covenant of good faith and fair dealing inherent in the agreement requires the Hotel to exercise its complete discretion in a way that gives equal consideration to the owners of the rental pool units and the Hotel. But on the evidence before me, I do not find that the Hotel abused its discretion in using the villa units on a complimentary basis. They were authorized to do so and there is nothing irrational or arbitrary about the way it used the villa units on a complimentary basis. We find that the villa unit owners were not harmed by the exercise of the Hotel's discretion. Therefore, as to this claim, we find in favor of the Hotel and against plaintiff.

### III. Villa Unit Undercharging

Plaintiff claims that the Hotel charged rates that were too low for the villa units. Again, paragraph 4(b) of the Rental Pool Agreement and the Confidential Offering Memorandum at 18, vest complete discretion in the Hotel as to the rental rates, and discloses that the Hotel and the rental unit owners may have different views about the rental rates that would best maximize rental income. Once again, unless the Hotel abuses that discretion, its decision will be upheld. Plaintiff claims that because the villa rooms were bigger, they should not have been rented at an average room rate. The Hotel's witnesses testified that the setting of room rates is a complex process that is driven by market demand and room availability. They testified that the Hotel set the rates to maximize the revenue for both the Hotel and the villa unit owners. If the rates are set too high, the rooms will not rent. There was substantial evidence that, except at peak periods or during events such as the Super Bowl, the demand for villa units was less than the demand for Hotel rooms generally, and that the Hotel made a conscious effort to move people to the villa rooms in order to make the system work.

Given the fluid nature of room rates in an ever changing market, and given the complete discretion vested in the Hotel under the parties' contracts, we find that the Hotel did not abuse its discretion in setting rental rates for the villa units. We therefore find in favor of the Hotel and against the plaintiff on plaintiff's claim of undercharging for renting villa units.

### IV. The 17% Revenue Claim

Under paragraph 8 of the Rental Pool Agreement, subject to certain exceptions, the parties split rental pool revenue fifty-fifty. There is no evidence that the Hotel did not pay 50% of the revenue to the rental pool unit owners. However, the current managers of the Hotel inherited a policy of managing the use of the rental units so as to ensure that the rental pool participants achieve at least 17% of the room revenue generated by both the Hotel and the rental units. The director of finance of the Hotel testified that the 17% figure was a floor and not a ceiling. The 17% figure was the approximate ratio of the number of villa units to the number of total rooms available.

As we noted in *Conlon I*, the Rental Pool Agreement and Confidential Offering Memorandum are silent with respect to the extent to which the Hotel is to use the rental pool units. Paragraph 1 of the Rental Pool Agreement requires the Hotel to use its reasonable efforts to rent the units as Hotel accommodations, but the extent of their occupancy is within the "sole discretion" of the Hotel. Paragraph 4(b) of the Rental Pool Agreement.

Plaintiff contends that its expert's "rack rate analysis" should form the basis by which the court could compute the plaintiff's damages based upon the Hotel's use of the 17% convention. But the court finds that approach to be a simplistic attempt at dealing in a one dimensional way with a problem that is multi-dimensional. The evidence was plain that the Hotel almost always rents its rooms below the rack rate. And, as already noted, the evidence was that the Hotel used the 17% figure as a floor and not a ceiling. There was evidence that the villa units would not achieve the 17% revenue figure if left on their own. The court finds that the Hotel did not arbitrarily cap the use of the rental villa units so as to achieve 17% of the Hotel's revenue. The Rental Pool Agreement requires payment to the rental pool unit owners of 50% of the revenue they achieve, but the Rental Pool Agreement does not address the extent to which the rental pool units would be used at all. This, apparently, is a major defect in the so-called "first generation" rental pool agreements. Mr. Finney testified that the units have appreciated greatly since he purchased them and that each unit is generating sufficient rental income to characterize them as a "good investment." Under these circumstances, we cannot say that the Hotel's method of using the villa units was arbitrary, capricious, or an abuse of its discretion which, under the contracts, is complete.

We find and conclude that while the 17% convention is not part of the parties' contract, its adoption and use in administrating the Rental Pool Agreement was not an abuse of discretion because the agreement is silent with respect to the extent to which the Hotel must use the villa units at all.

For all of these reasons, therefore, we find in favor of the Hotel and against the plaintiff on the plaintiff's claim that the Hotel arbitrarily capped villa rental unit revenue at 17%.

Pursuant to the foregoing Findings and Conclusions, the clerk is directed to enter final judgment in favor of the plaintiff and against the defendants in the amount of $525,000.00. This renders moot "Defendants' Motion for Judgment on Partial Findings" (doc. 176).

DATED this 4th day of November, 2009.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge